```
                  UNITED STATES DISTRICT COURT
                            FOR THE
                      DISTRICT OF VERMONT

JOSEPHA W. AUSTIN; ROBERT      )
D. AUSTIN; ROBIN L. CRUZ;      )
ROBERT J. HILL; AIMEE LYONS;   )
GORDANA POBRIC; and JENNIFER   )
HASELMAN,                      )
                               )
          Plaintiffs,          )
                               )
          v.                   )         Case No. 2:23-cv-272
                               )
MONSANTO COMPANY; BAYER        )
CROPSCIENCE L.P.; SOLUTIA,     )
INC.; PHARMACIA, L.L.C.;       )
PHARMACIA, INC.; and           )
PHARMACIA CORP.,               )
                               )
          Defendants.          )
```

## OPINION AND ORDER

Plaintiffs Josepha Austin, Robert Austin, Robin Cruz, Robert Hill, Aimee Lyons, Gordana Pobric, and Jennifer Haselman ("Plaintiffs") bring this action claiming harm related to the presence of polychlorinated biphenyls ("PCBs") at Burlington High School ("BHS"). Their causes of action against Defendants Monsanto Company, Bayer CropScience L.P., Solutia Inc., and Pharmacia L.L.C. ("Defendants") include strict liability, negligence, failure to warn, misrepresentation, and loss of consortium. Pending before the Court is Defendants' motion to dismiss Plaintiffs' misrepresentation claim (Count IV) pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion to dismiss is denied.

## Factual Background

Josepha Austin, Robin Cruz, Robert Hill, Gordana Pobric, and Jennifer Haselman each claim to have been exposed to PCBs for a period of years while working as teachers at BHS. Plaintiff Aimee Lyons claims exposure while attending BHS as a student.  Plaintiff Robert Austin, husband of Josepha Austin, brings a claim for loss of consortium.

The Complaint alleges that between 1929 and 1977, Monsanto was the only manufacturer of PCBs for commercial use in the United States.  ECF No. 1 at 7, ¶ 33.  PCBs have been found to be toxic to humans and wildlife, and in the late 1970s were banned from manufacture and distribution in the United States. *Id.* at ¶¶ 36, 38.  The Complaint alleges that Defendant Monsanto Company ("Monsanto") knew the health risks of PCBs for decades prior to the ban, and despite this knowledge failed to stop producing or distributing its product.  *Id.* at 21, ¶ 76.

PCBs allegedly entered school buildings in various ways. For many years they were incorporated as plasticizers in caulking, paints, ballasts, sealants, and other applications. *Id.* at 22-23, ¶¶ 85, 87.  PCBs were also produced as components of electrical equipment such as transformers, motor start capacitors, and lighting ballasts.  *Id.*, ¶ 90.  The Complaint asserts that "[g]radually over time, school building materials become secondary sources of PCB contamination after absorbing

2

PCBs emitting from the primary contamination sources." *Id.* at 24, ¶ 94.

BHS was built in 1964. *Id.* at 27, ¶ 107. In November of 2018, the school was reportedly approved for a major renovation project. *Id.* The Complaint alleges that an environmental assessment is a standard early step in such a project. *Id.* When BHS received a report revealing PCB levels in every building at the school, the reconstruction project team determined that the current campus was too contaminated to renovate. *Id.* at 28, ¶ 111.

Josepha Austin's classroom was in Building F, which reportedly had the highest level of PCBs on the BHS campus. She has allegedly suffered "a multitude of cognitive issues since beginning her work at BHS," including memory loss, confusion, and brain fog. *Id*. at 28-29, ¶¶ 113-114. Robin Cruz and Robert Hill, whose classrooms were also in Building F, have suffered from those same issues. *Id.* at 29, ¶¶ 115-118. Aimee Lyons, the former BHS student, allegedly suffers from a thyroid condition and has had reproductive issues resulting in three miscarriages. *Id*., ¶ 120.

Gordana Pobric spent time teaching in Buildings E and F. She has reportedly suffered a range of injuries including hyperthyroidism due to Graves' disease; brain fog; cognitive issues; headache; fatigue; rapid heartbeat; palpitations;

3

shakiness; dizzy spells; weight loss; sleep difficulties; anxiety; and emotional lability.  Her Graves' disease causes her eyes to bulge, with the left eye more prominent.  *Id.* at 30, ¶¶ 122-123.  Jennifer Haselman's office was in Building D, which was connected to Building F.  She suffered and allegedly continues to suffer from injuries including brain fog; cognitive issues; anxiety; emotional lability; fatigue; and Hashimoto's thyroiditis.  *Id.* at ¶¶ 124-125.

The Complaint brings five causes of action.  Count I alleges strict liability.  Count II claims negligence.  Count III asserts a cause of action for failure to warn.  Count IV alleges misrepresentation.  Count V, brought by Robert Austin, alleges loss of consortium.  Defendants now move to dismiss Count IV for failure to state a claim.

## Discussion

### I.   Motion to Dismiss Standard

Under Rule 12(b)(6), a claim may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 579 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw

4

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [their] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the Complaint as true and draw all reasonable inferences in the Plaintiffs' favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## II.  Misrepresentation

### A.  Factual Claims

Plaintiffs allege that as early as 1937, Monsanto was aware that inhalation of PCBs in industrial settings resulted in toxic effects on humans. ECF No. 1 at 14, ¶ 56. In the 1950s, internal Monsanto documents confirmed the company's knowledge that PCBs are toxic, as the company warned that lunches should not be eaten in the areas where PCBs were manufactured. *Id.*, ¶

58.   Subsequent studies found PCBs to be harmful to animals and the environment generally.  *Id.* at 14-15, ¶ 62.

The Complaint alleges that "[d]espite its unique knowledge, Monsanto chose not to warn its customers and the public regarding the human health dangers of [its] PCBs, instead concealing the same." *Id.* at 20, ¶ 73.  The Complaint further alleges that Monsanto knew or should have known that schools were not appropriate for PCBs, but made no effort to warn BHS, parents of BHS students, or teachers and staff at BHS.  In support of their misrepresentation claim, Plaintiffs allege that Monsanto "actively and/or negligently concealed and/or omitted material facts as to what Monsanto knew and when it knew about the ... risks of PCBs." *Id.* at 34, ¶ 146.  Plaintiffs submit that they reasonably relied on Defendants' omissions of material facts and failures to disclose their knowledge of the dangers of PCBs.  *Id.*

### B.  Substantive Law

Because the Court has jurisdiction over this case by virtue of diversity of citizenship, *see* 28 U.S.C. § 1332, it applies the substantive law of Vermont, the forum state.  *See Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994) ("Federal courts sitting in diversity cases will, of course, apply the substantive law of the forum State on outcome determinative issues.").  "In ascertaining the substantive law

6

of the forum, federal courts will look to the decisional law of the forum state, as well as to the state's constitution and statutes." *Id.* at 119 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). "Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." *Id.*

### C. Nature of the Claim

Count IV of the Complaint asserts a cause of action for misrepresentation. The Complaint does not specify whether the alleged misrepresentation was intentional, negligent, or fraudulent. Plaintiffs' opposition memorandum characterizes their cause of action as one for negligent misrepresentation. ECF No. 30 at 2, 6. Given that clarification, and because both parties have briefed that issue, the Court construes Count IV of the Complaint as bringing a cause of action for negligent misrepresentation.

### D. Negligent Misrepresentation

Vermont has adopted the definition of negligent misrepresentation set forth in the Restatement (Second) of Torts § 552, which provides in part:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary

7

> loss caused to them by their justifiable reliance upon
> the information, if he fails to exercise reasonable
> care or competence in obtaining or communicating the
> information.

*Limoge v. People's Tr. Co.*, 168 Vt. 265, 269 (1998) (quoting

Restatement (Second) of Torts § 552(1)).  Defendants argue that

Plaintiffs' claim fails because the Complaint does not allege a

specific business transaction.  Indeed, the initial transaction

in question likely happened around the time of construction,

several years before any Plaintiff was present at BHS.

Nonetheless, as explained below, the Restatement contemplates

liability for negligent misrepresentation not only for parties

directly involved in the transaction, but also to those persons

who were meant to benefit from the duty to disclose accurate

information.  *See* Restatement (Second) of Torts § 552(3).

Subsection 3 of Section 552 extends liability where there

is a "public duty" to provide accurate information:

> The liability of one who is under a public duty to
> give the information extends to loss suffered by any
> of the class of persons for whose benefit the duty is
> created, in any of the transactions in which it is
> intended to protect them.

Restatement (Second) of Torts § 552(3).  In *Rubman et al. v.

Bayer AG et al.*, a case currently pending in this Court

involving a similar negligent misrepresentation claim against

these same Defendants, the Court found it "plausible that when

materials were purchased for construction of BHS the transaction

was intended to benefit the students, faculty, and
administrators who would spend their days in the schools, and
those parties were owed a duty of disclosure." Case No. 2:22-
cv-181 (ECF No. 65 at 10). The Court therefore denied
Defendants' motion to dismiss the plaintiffs' misrepresentation
claim.

Defendants now contend that the "public duty" cited in
Section 552(3) is only applicable to individuals or corporations
when such entities are required by statute to file information
for the benefit of the public. For support, they cite *Glassford
v. Dufresne & Assocs., P.C.*, 2015 VT 77, arguing that no court
in Vermont has applied the public duty rule under Section 552(3)
in the absence of a specific statutory duty. ECF No. 28 at 13.
*Glassford* held that the duty under Section 552(3) "includes
private individuals or entities under a statutory duty to supply
information." 2015 VT 77, ¶ 16. The Vermont Supreme Court did
not limit the duty to statutory mandates, and the Court will not
impose such a limitation here.

Defendants further argue that, given Section 552(1)'s
limitation of liability to pecuniary loss, Plaintiffs cannot
bring a negligent misrepresentation claim for personal injuries.
Plaintiffs concede that they are limited to pecuniary losses,
which allegedly include past and future medical expenses. ECF
No. 30 at 11. They also cite Sections 310 and 311 of the

Restatement (Second) of Torts, each of which contemplate liability for physical harm resulting from a negligent misrepresentation. *Id.* at 13.  Defendants agree that these Sections of the Restatement, though never explicitly adopted by Vermont courts, "more closely align[] with the facts of this case."  ECF No. 28 at 9.

> Section 311 of the Restatement (Second) provides:
>
> (1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information where such harm results (a) to the other, or (b) to such third persons as the actor should expect to be put in peril by the action taken.
>
> (2) Such negligence may consist of failure to exercise reasonable care (a) in ascertaining the accuracy of the information, or (b) in the manner in which it is communicated.

Restatement (Second) of Torts § 311.[1]  Comment b of Section 311 states that the rule is not limited to information given in a business or professional capacity: "[i]t extends to any person who, in the course of an activity which is in furtherance of his own interests, undertakes to give information to another, and knows or should realize that the safety of the person of [sic] others may depend upon the accuracy of the information."  *Id.*,

---

[1] In *Rubman*, this Court found it unnecessary to address these portions of the Restatement.  Case No. 22-181, ECF No. 65 at 12 n.2.  In that case, the defendants did not argue that a negligent misrepresentation claim cannot apply to personal injuries.

comment b.   Comment c to Section 310 similarly provides that
"[a] misrepresentation may be negligent not only toward a person
whose conduct it is intended to influence but also toward all
others whom the maker should recognize as likely to be imperiled
by action taken in reliance upon his misrepresentation."
Restatement (Second) of Torts § 310, comment c.[2]

While the Vermont Supreme Court has not adopted Sections
310 and 311, *see Kellogg v. Wyeth*, 762 F. Supp. 2d 694, 706 n.7
(D. Vt. 2010) ("The Vermont Supreme Court has neither adopted
nor rejected these sections of the Restatement."), it has
endorsed Section 552.   Comment i to Section 552 states that
"[w]hen a misrepresentation creates a risk of physical harm to
the person, land or chattels of others, the liability of the
maker extends, under the rules stated in §§ 310 and 311, to any
person to whom he should expect physical harm to result through
action taken in reliance upon it."   Restatement (Second) of
Torts § 552, comment i.   As Vermont courts have "generally
followed applicable provisions of the Restatement unless there

---

[2]   The Court also notes Section 9 of the Restatement (Third) of
Torts, entitled "Liability of Commercial Product Seller or
Distributor for Harm Caused by Misrepresentation."   Section 9
states: "One engaged in the business of selling or otherwise
distributing products who, in connection with the sale of a
product, makes a fraudulent, negligent, or innocent
misrepresentation of material fact concerning the product is
subject to liability for harm to persons or property caused by
the misrepresentation."   Restatement (Third) of Torts § 9.

is a strong rationale not to do so," *LeClair v. LeClair*, 2017 VT 34, ¶ 11 n.4, the Court expects the Vermont Supreme Court would follow upon its adoption of Section 552(1) and likely consider these related sections of the Restatement when analyzing liability.  Given the Restatement's explicit provisions for physical harm, the Court declines to dismiss Plaintiffs' negligent misrepresentation claims insofar as they are based upon personal injuries.

Defendants next contend that Plaintiffs have failed to plead justifiable reliance, arguing that such reliance must be direct and actual.  For support, they rely on *Glassford*, in which the Vermont Supreme Court considered home buyers' reliance on a wastewater certification submitted to the State.  The court noted that "[t]he necessary piece in this puzzle is that the plaintiff actually received or was made aware of the false statements and directly relied on those false statements." *Glassford*, 2015 VT 77, ¶ 23.  Noting that the plaintiffs "never actually viewed the certificate," the ruling held that "indirect reliance is insufficient to render defendant liable for its allegedly false information."  *Id.*, ¶ 24.

In *Rubman*, this Court distinguished *Glassford*, noting that the *Rubman* plaintiffs, like Plaintiffs in this case, relied upon omissions of fact rather than direct statements.  "Those omissions occurred initially at the time of construction, and

the duty to disclose arguably increased as Defendants' knowledge about PCBs developed."  Case No. 2:22-cv-181, ECF No. 65 at 11. The Court also cited the "public duty" owed under Restatement (Second) of Torts § 552(3), and found that plaintiffs had plausibly alleged justifiable reliance under the objective standard established by the Vermont Supreme Court.  *Id*. at 11-12.  "Plaintiffs' own knowledge, and whether their reliance on Defendants' alleged omission was objectively justified, may be explored in discovery.  At this early stage in the case, however, the Court will not dismiss their negligent misrepresentation cause of action for failure to state a claim." *Id.* at 12.  As the allegations and arguments in *Rubman* mirror those presented here, the Court reaches the same conclusion in this case.

## Conclusion

For the reasons set forth above, Defendants' motion to dismiss Count IV of the Complaint (ECF No. 28) is denied.

DATED at Burlington, in the District of Vermont, this 12th day of April, 2024.


/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge