```
                  UNITED STATES DISTRICT COURT
                            FOR THE
                     DISTRICT OF VERMONT

JOSEPHA W. AUSTIN; ROBIN L.     )
CRUZ; GORDANA POBRIC; and       )
JENNIFER HASELMAN,              )
                                )
     Plaintiffs,                )
                                )
          v.                    )    Case No. 2:23-cv-272
                                )
MONSANTO COMPANY; BAYER         )
CROPSCIENCE L.P.; SOLUTIA,      )
INC.; PHARMACIA, L.L.C.;        )
PHARMACIA, INC.; and            )
PHARMACIA CORP.,                )
                                )
     Defendants.                )
```

## OPINION AND ORDER

Plaintiffs Josepha Austin, Robin Cruz, Jennifer Haselman, and Gordana Pobric bring this action claiming they were harmed by exposure to polychlorinated biphenyls ("PCBs") at Burlington High School ("BHS"). Defendants Monsanto Company, Bayer CropScience L.P., Solutia, Inc., Pharmacia, L.L.C., and Pharmacia, Inc. now move the Court, pursuant to Federal Rule of Civil Procedure 21, to sever the case into four separate actions – one for each Plaintiff – for purposes of summary judgment and trial. Plaintiffs oppose the motion, arguing that their claims have significant similarities and will be proven with overlapping evidence relating to PCB exposure.

For the reasons set forth below, the motion to sever is denied.

**Background**

This case centers on Plaintiffs' claims of injuries resulting from exposure to PCBs at BHS. Plaintiff Josepha Austin attended BHS from 1980-1984 and taught there from 2015-2020. The BHS campus is comprised of several buildings, each of which is identified by a letter of the alphabet. Ms. Austin worked in Buildings A, D, E, and F. She claims that her exposure to PCBs in those various buildings resulted in neurotoxicity/neurocognitive brain injury and increased cancer risk. Her brain injury symptoms reportedly include memory issues, difficulty with problem-solving, and "decision fatigue." She also allegedly suffers from anxiety about the future of her health.

Plaintiff Robin Cruz taught at BHS from 2015-2019, working in Buildings B, C, D, E, and F. Like Ms. Austin, Ms. Cruz's alleged injuries include neurotoxicity/neurocognitive brain injury and an increased cancer risk. She reports suffering from extreme stress, anxiety, depression, and cognitive difficulty. Defendants note that Ms. Cruz was taking medication for anxiety and depression long before her employment at BHS, and that she suffered a head injury shortly before the onset of her alleged PCB-induced symptoms.

Plaintiff Jennifer Hanselman taught at BHS from 2016-2019, working in Buildings B, C, D, and F. As with co-Plaintiffs

Austin and Cruz, Ms. Hanselman's alleged injuries include neurotoxicity/neurocognitive brain injury and an increased cancer risk.  Ms. Hanselman also allegedly suffers from a thyroid condition diagnosed as Hashimoto's disease.

Plaintiff Gordana Pobric taught at BHS from 2005-2020, working in Buildings A, B, C, D, E, and F.  Ms. Pobric's injuries allegedly include neurotoxicity/neurocognitive brain injury and an increased cancer risk.  Her symptoms reportedly manifest as "brain fog," brief dizzy spells, and anxiety.  She also suffers from a thyroid injury diagnosed as Graves' Disease, as well as an injury to her reproductive system.

Plaintiffs note significant commonalities in their periods of employment at BHS, as well as the locations of their work.  Their alleged injuries are also similar in several respects.  They submit that much of the expert proof regarding PCB exposure will overlap, and that holding separate trials would be an inefficient use of judicial resources.  Defendants argue that the Plaintiffs' similarities are superficial, and that the alleged injuries, durations of exposure, and work locations are sufficiently distinct to warrant separate trials.

## Discussion

Rule 21 provides that "[t]he court may ... sever any claim against a party."  Fed. R. Civ. P. 21.  "The moving party bears the burden of demonstrating that severance is required to avoid

3

prejudice or confusion and to promote the ends of justice." *N. Jersey Media Grp. Inc. v. Fox News Network, LLC*, 312 F.R.D. 111, 114 (S.D.N.Y. 2015) (collecting cases) (internal quotation marks omitted). "The decision whether to grant a severance motion is committed to the sound discretion of the trial court." *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988).

When presented with a motion to sever, a court should consider whether severance will "serve the ends of justice and further the prompt and efficient disposition of litigation." *T.S.I. 27, Inc. v. Berman Enters., Inc.*, 115 F.R.D. 252, 254 (S.D.N.Y. 1987); *accord In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 247 F.R.D. 420, 427 (S.D.N.Y. 2007). Courts contemplating severance generally examine the following factors:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 720 (S.D.N.Y. 2011); *see also Costella v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 263-66 (D. Conn. 2012); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 214 F.R.D. 152, 154-55 (S.D.N.Y. 2003). "[C]ourts have generally granted severance only after finding more than one of the

[factors] was met." *N. Jersey Media Grp. Inc.*, 312 F.R.D. at 115.

With respect to the first factor, the Court finds that Plaintiffs' claims arise out of the same transaction or occurrence. "The overall consensus within this Circuit is that 'same transaction' encompasses 'all logically related claims' and should be determined on a case-by-case basis." *Ayco Co. v. Frisch*, No. 111CV580LEKRFT, 2012 WL 12887701, at *4 (N.D.N.Y. Aug. 13, 2012) (quoting *Agnesini v. Doctor's Assocs., Inc.*, 275 F.R.D. 456, 459 (S.D.N.Y. 2011)). Application of the "logically related" test derives from analysis of Federal Rule of Civil Procedure 13(a):

> the court must assess the logical relationship between the claims and determine whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979) (internal quotation omitted). When making this determination, the Second Circuit "take[s] a broad view, not requiring an absolute identity of factual backgrounds . . . but only a logical relationship between them." *Id.* (internal quotation omitted).

*Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008); accord *Jones v. Ford Motor Credit*, 358 F.3d 205, 209 (2d Cir. 2004). Accordingly, "[a]bsolute identity of all events and all facts is unnecessary, . . . and the presence of even material dissimilarities between the substantive allegations 'does not

automatically bring such claims outside the same transaction or occurrence language.'" *Ayco Co.*, 2012 WL 12887701, at *6 (quoting *Puricelli v. CNA Ins. Co.*, 185 F.R.D. 139, 142 (N.D.N.Y. 1999)).

Plaintiffs argue that their claims are logically related because they involve the same product, the same allegations of defective construction, and the same claims of failure to warn. Moreover, their liability claims rely on many of the same expert witnesses. Defendants contend that factual differences in Plaintiffs' claims render them insufficiently related. For example, Ms. Pobric's alleged exposure occurred over a 14-year period, primarily in a specific classroom in Building E. In contrast, Ms. Haselman's alleged exposure occurred during a three-year period as a special educator, with no assigned classroom. Plaintiff Austin's alleged exposure includes a period in the 1980s. Defendants also note variations in the alleged injuries, and that each Plaintiff has a unique pre-existing medical history.

Accepting that Plaintiffs' claims have differences, the Court finds that the "transaction or occurrence" factor nonetheless weighs in their favor. Each Plaintiff was at BHS between approximately 2015 and 2020. Building assignments varied, but all four Plaintiffs allegedly spent time in Buildings D and F. Three Plaintiffs also worked in Buildings B,

C, and E.  Two Plaintiffs worked, at least in part, in Building A.  And regardless of the location of exposure, PCBs in each building can allegedly be traced back to Defendants.  Plaintiffs' claims of harm caused by ingestion, inhalation, and physical contact with those PCBs are the same.

As to the second factor, the Court finds that Plaintiffs' claims share sufficiently common questions of law and fact.  The liability issues are the same, with the fundamental question – whether PCBs caused the alleged harms – common to each Plaintiff.  Furthermore, all Plaintiffs allege neurotoxicity/neurocognitive brain injuries.  They also describe similar symptoms, including loss of sharpness and memory issues.  Two of the four Plaintiffs suffer from thyroid issues, though with differing diagnoses, resulting from altered thyroid levels.

The third factor considers judicial economy.  Trying one consolidated case is, in most instances, more efficient than trying four separate cases, particularly where much of the evidence is the same.  Pretrial motions, including motions *in limine*, will likely address issues that pertain to Plaintiffs as a group.  And with both parties suggesting that a trial could last several weeks, four such trials would significantly tax judicial resources.

On the question of judicial economy, Defendants claim support from *Malcolm v. National Gypsum Company*, 995 F.2d 346

7

(2d Cir. 1993), in which "each [of 600 initial plaintiffs] had been exposed to asbestos in one or more of over 40 power-generating stations." *Id.* at 348. Forty-eight plaintiffs were selected for a consolidated trial involving multiple defendants and "numerous third and fourth party defendants." *Id.* at 348, 352. On appeal, the Second Circuit found that the cases should not have been consolidated given the "maelstrom of facts, figures, and witnesses" and the resulting likelihood of jury confusion. *Id.* at 352, 354. The Second Circuit also noted that its "holding today is narrow and amounts to little more than a caution that it is possible to go too far in the interests of expediency and to sacrifice basic fairness in the process." *Id.* *Malcolm* is easily distinguished from this case, in which four plaintiffs bring claims against a small group of defendants based on facts arising out of essentially a single workplace. The Court acknowledges the *Malcolm* court's warning about "basic fairness," but finds that the claims presented here are far more contained than the "maelstrom" of evidence presented to the jury in that case.

The Court next considers the fourth factor: whether severance would avoid prejudice to Defendants. Defendants argue that a multi-plaintiff trial poses a risk of jury confusion, again relying on *Malcolm*. In *Malcolm*, the Second Circuit warned that despite instructions to the jury, the trial court could not

8

prevent "an unacceptably strong chance that the equal apportionment of liability amounted to the jury throwing up its hands in the face of a torrent of evidence." *Id.* at 352. As noted previously, *Malcolm* is distinguishable in large part by the number of plaintiffs, defendants, and different workplaces involved. Here, much of the evidence, particularly that relating to the dangers of PCB exposure and Defendants' knowledge of those dangers, will apply equally to all four Plaintiffs. A consolidated trial will not prejudice Defendants' ability to respond. Defendants express concern about the jury differentiating among Plaintiffs' injuries, but with only four Plaintiffs the Court is not convinced that separate trials are necessary to avoid any anticipated prejudice.

Finally, the Court considers whether different witnesses and documentary proof are required for the separate claims. Plaintiffs note that their liability cases are the same, and that the differences lie in their respective injuries and damages. On balance, the Court finds that the evidence relating to liability, much of which will be presented by experts whose testimony will be relevant to all claims, justifies a consolidated case.

Plaintiffs refer the Court to *Pilliod v. Monsanto Co.*, in which two persons sued Monsanto for injuries allegedly suffered as a result of exposure to Roundup, a Monsanto product. 67 Cal.

9

App. 5th 591 (2021). The California Court of Appeal affirmed the trial court's denial of Monsanto's motion to sever, finding that "[m]ost of the evidence at trial pertained to both plaintiffs, including the evidence of general causation and Monsanto's conduct. The evidence of when and where Roundup was used was largely the same for both plaintiffs. . . . Further, the jury instructions emphasized consistently that each plaintiff's case was to be considered separately." *Id.* at 626. This same analysis applies here, since much of the evidence will pertain to both knowledge and causation, and proper jury instructions can assure that each Plaintiff's case is considered individually. Accordingly, the Court finds that severance of this case into four, separate cases is not warranted.

## Conclusion

For the reasons set forth above, Defendants' motion to sever (ECF No. 151) is **denied**.

DATED at Burlington, in the District of Vermont, this 28th day of May, 2025.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge
