```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                        DISTRICT OF VERMONT
```

JOSEPHA W. AUSTIN; ROBIN L.   )
CRUZ; GORDANA POBRIC; and     )
JENNIFER HASELMAN,            )
                              )
     Plaintiffs,              )
                              )
           v.                 )   Case No. 2:23-cv-272
                              )
MONSANTO COMPANY; BAYER       )
CROPSCIENCE L.P.; SOLUTIA,    )
INC.; PHARMACIA, L.L.C.;      )
PHARMACIA, INC.; and          )
PHARMACIA CORP.,              )
                              )
     Defendants.              )

## OPINION AND ORDER

Plaintiffs Josepha Austin, Robin Cruz, Gordana Pobric, and Jennifer Haselman bring this action claiming physical, cognitive, and emotional harm resulting from their exposure to polychlorinated biphenyls ("PCBs"). Defendants Monsanto Company, Bayer CropScience, L.P., Solutia, Inc., and Pharmacia L.L.C. (collectively "Monsanto") now move to exclude the testimony of Kevin Coghlan. Plaintiffs intend to call Coghlan to testify as an expert about PCB levels at Burlington High School. For reasons set forth below, Monsanto's motion to exclude Coghlan's testimony is denied.

## Background

The Complaint alleges that Plaintiffs were exposed to PCBs while at Burlington High School in Burlington, Vermont, and have

suffered adverse consequences as a result. Plaintiffs have retained Coghlan as an expert to testify about their indoor exposure to PCBs at the high school. While Monsanto does not challenge his professional qualifications, the Court notes that Coghlan is an industrial hygienist with 35 years of experience assessing environmental issues in workplaces. That experience has included work with PCBs. According to Coghlan's expert report, he has "personally been involved in, or directed, over thirty projects involving the identification, assessment, remediation, risk assessment, and mitigation of PCBs." ECF No. 207-2 at 9.

In this case, Coghlan reviewed test results gathered by Fuss & O'Neill ("F&O"), the Burlington School District's environmental consultant. Those tests reportedly revealed PCBs "above the Screening Level of 15 nanograms per cubic meter (ng/m$^3$) established by the Vermont Department of Health (VTDH). In many cases, the measured levels exceeded the VTDH School Action Level (SAL) of 100 ng/m$^3$ for high schools." *Id.* at 10. Coghlan's report cites particularly high readings in Burlington High School's Building F. Air sampling was also performed in Buildings A through E. In addition to the F&O results, Coghlan reviewed data from dust samples collected by his company, Environmental Health & Engineering, Inc.

Based on his review of the available data, Coghlan concluded that Plaintiffs were exposed to PCB levels that approached or exceeded the Vermont School Action Level for adults, and in some cases exceeded the higher threshold Vermont Immediate Action Level, as well as the EPA's Evaluation Level for adults. For each Plaintiff, Coghlan performed an individual assessment based, in part, upon the building(s) in which that person spent his or her workdays. After determining exposure levels, Coghlan concluded that those exposures added to each Plaintiff's "body burden" of PCBs.

Monsanto is critical of Coghlan's methodologies and data. Monsanto notes that for the individual assessments, Coghlan used building averages rather than results from the rooms in which Plaintiffs actually spent their time. Monsanto also submits that F&O tested areas where there were already concerns about PCB levels, thus rendering the testing non-random and unrepresentative of PCB levels generally. Finally, Monsanto argues that Coghlan is not a toxicologist and is therefore not qualified to testify about PCB "body burden."

Plaintiffs argue that the data is representative of their PCB exposures, that Coghlan's use of the term "body burden" is merely referencing the level of contact with PCBs, and that Monsanto's criticisms pertain to the weight of Coghlan's conclusions rather than their admissibility.

3

## Discussion

Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides in relevant part:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has held that, for expert testimony to be admissible under Rule 702, it must satisfy three requirements: (1) the expert witness must be qualified; (2) the testimony must be reliable; and (3) the testimony must be relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-91 (1993). The proponent of expert testimony has the burden of establishing that the admissibility requirements are met by a preponderance of the evidence. *Id.* at 592 n.10. Under the *Daubert* standard, the trial court "functions as the gatekeeper for expert testimony." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997).

Monsanto does not challenge Coghlan's qualifications to testify about building contamination. With respect to reliability and relevance, the Court must "ensur[e] that an expert's testimony both rests on a reliable foundation and is

relevant to the task at hand." *Id.* at 597. Expert testimony should be excluded based on reliability concerns only "if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009) (internal quotation marks omitted).

When considering expert evidence, a trial judge has "broad discretion unless his decision is clearly wrong." *United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991). Moreover, "'[t]he judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions.'" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 746 (3d Cir. 1994)). "As the Supreme Court has explained, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 596).

Here, Monsanto argues that Coghlan's methodology was flawed because the sampling data he used was allegedly incomplete. An expert report submitted by Monsanto states that the air sampling locations chosen by F&O "were selected based on potential worst-

5

case air concentration scenarios (i.e. locations were based on rooms with or adjacent to rooms with building components containing >50 mg/kg PCBs)." ECF No. 207-4 at 105. Monsanto thus claims that the samples were non-random and likely overstated the PCB air concentration in any given building.

Plaintiffs concede that F&O's testing was performed to address concerns about existing PCB levels. They also note that the testing was conducted in consultation with the EPA Region 1 PCB Coordinator, the VTDH, and the Vermont Department of Conservation. While coordination with those agencies dispels any concern about intentional sampling bias, the method of sampling (collecting samples near known sources of PCBs) does suggest that the results might overstate the level of contamination. That possibility, however, can be raised and explored during cross-examination, and goes to the weight of Coghlan's testimony rather than its reliability. *See Auto. Ins. Co. of Hartford, Conn. v. Electrolux Home Prods., Inc.*, No. 10-CV-0011 CS, 2012 WL 6629238, at *2 (S.D.N.Y. Dec. 20, 2012) ("Potential sample bias is a subject for cross-examination, and goes to the weight, not the admissibility, of the expert testimony."); *cf. Citizens Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 121 (3d Cir. 2004) ("The courts have held generally that mere technical unreliability goes to the weight accorded a survey, not its admissibility."). The same is true for

6

allegations that Coghlan erroneously omitted his own company's dust samples from Building A, and that the samples collected were untimely (taken too long after the buildings were vacated) and insufficient (too few).

Monsanto next criticizes Coghlan's use of data samples to extrapolate values for entire buildings. Monsanto argues that, for example, there is no evidence that Plaintiff Austin spent any time in the rooms where PCB levels were measured. Monsanto also notes that there were wide variations across rooms, and that Coghlan failed to identify an error rate.

Plaintiffs submit that the practice of averaging PCB concentrations within a school is endorsed by the EPA, which itself has conducted building studies employing averages and medians. Plaintiffs also contend that there is no mandatory guidance for "a certain amount or location of air or dust sampling" in school buildings. ECF No. 226 at 44. While Monsanto and its experts may argue that the use of averages is not adequate to prove individual exposure levels, those arguments again go to the weight of Coghlan's analysis rather than its admissibility.

Monsanto's final issue is that Coghlan's report discusses "body burden" of PCBs resulting from exposure but offers no "body burden" calculations. Monsanto also contends that Coghlan, as an industrial hygienist, lacks the expertise to offer any

7

"body burden" opinions. It appears from Coghlan's report, however, that he is using the term "body burden" in a non-technical way. As Monsanto points out, Coghlan offers no calculations of either dose or impact. His report instead makes the assertion that increased exposure to PCBs could heighten a person's chances of being negatively impacted. Coghlan is qualified to make that assertion, and Monsanto will be allowed to question the extent of his knowledge, and the limitations of his opinion, with respect to PCB "body burden."

## Conclusion

For the reasons set forth above, Defendants' motion to exclude the testimony of Kevin Coghlan (ECF No. 207) is denied.

DATED at Burlington, in the District of Vermont, this 24th day of October 2025.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge