UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| JOSEPHA W. AUSTIN; ROBIN L. CRUZ; GORDANA POBRIC; and JENNIFER HASELMAN, <br><br> Plaintiffs, <br><br> v. <br><br> MONSANTO COMPANY; BAYER CROPSCIENCE L.P.; SOLUTIA, INC.; PHARMACIA, L.L.C.; PHARMACIA, INC.; and PHARMACIA CORP., <br><br> Defendants. | Case No. 2:23-cv-272 |

## OPINION AND ORDER

Plaintiffs Josepha Austin, Robin Cruz, Gordana Pobric, and Jennifer Haselman bring this action claiming harm resulting from their exposure to polychlorinated biphenyls ("PCBs"). Defendants Monsanto Company, Bayer CropScience, L.P., Solutia, Inc., and Pharmacia L.L.C. (collectively "Monsanto") now move to exclude the testimony of Dr. Gerald Markowitz and Dr. Richard DeGrandchamp. Plaintiffs intend to call these witnesses to testify about Monsanto's history with PCBs. For reasons set forth below, Monsanto's motion to exclude is denied.

## Background

The Complaint alleges that Plaintiffs were exposed to PCBs while at Burlington High School in Burlington, Vermont, and have suffered adverse consequences as a result. Plaintiffs intend to

call Dr. Gerald Markowitz to testify about: (1) what was known and knowable to Monsanto about the alleged dangers of PCBs; (2) how Monsanto promoted the use of PCBs and what warnings were provided; (3) what efforts Monsanto made to test PCBs for safety; and (4) what actions Monsanto took with respect to the alleged impacts of PCBs. Dr. Markowitz is the Distinguished Professor of History at John Jay College of Criminal Justice and the Graduate Center, City University of New York, and an adjunct professor of Sociomedical Sciences at Columbia University's Mailman School of Public Health. Plaintiffs' briefing describes Dr. Markowitz as an award-winning public health historian whose research has focused on twentieth century occupational safety and environmental health issues, including lead poisoning, asbestos, and PCBs.

   Dr. Markowitz has written about Monsanto's history with PCBs. Plaintiffs intend to ask him about documents in Monsanto's archive, and about testimony provided by Monsanto executives in past litigation. Monsanto objects to the admission of such testimony, arguing that Dr. Markowitz will editorialize about those sources and apply "his own subjective context and 'spin.'" ECF No. 208 at 5. Monsanto also submits that the documents and testimony speak for themselves, and that Dr. Markowitz's opinions are not founded on any expertise or methodology. More specifically, Monsanto points to certain statements in Dr.

2

Markowitz's written expert report that, it contends, implicate scientific or medical matters that are beyond his training. Monsanto also contends that Dr. Markowitz improperly offers legal conclusions about industry standards, as well as speculation about Monsanto's awareness and intentions with respect to PCBs. As discussed below, other courts have allowed Dr. Markowitz to testify notwithstanding similar objections.

Dr. Richard DeGrandchamp is a toxicologist and professor of toxicology at the University of Colorado. He began studying PCBs in the late 1990s in collaboration with the United States Navy and the EPA, and reportedly produced the Navy's first PCB toxicology risk assessment guidance document. Dr. DeGrandchamp's expert report addresses: (1) industry standards and protocols for toxicity testing between the 1930s and the 1960s; (2) chemical properties, toxicity, and bioaccumulation of PCBs; (3) the results of animal and mechanistic testing of PCBs; and (4) "the incorporation of testing protocols in the industrial and governmental sectors." ECF No. 226 at 22. He is expected to testify about the effects of PCBs, the history of toxicology testing, and how Monsanto's testing compared to industry standards over time.

Monsanto argues that Dr. DeGrandchamp will mislead the jury and go beyond his expertise when he testifies about Monsanto's knowledge and intentions. Monsanto also objects to Dr.

DeGrandchamp's proposed testimony about industry standards, characterizing it as legal opinion and arguing that it encroaches on the jury's role. Monsanto informs the Court that it has no objection to Dr. Grandchamp's testimony about PCB toxicity, though it plans to file a motion *in limine* to bar certain portions of that testimony.

## Discussion

Federal Rule of Evidence 702 governs the admissibility of expert testimony. The Rule provides that a witness who is qualified may testify in the form of an opinion or otherwise if the proponent demonstrates to the Court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has held that, for expert testimony to be admissible, it must satisfy three requirements: (1) the expert witness must be qualified; (2) the testimony must be reliable; and (3) the testimony must be relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-91 (1993). Applying the *Daubert* standard, the trial court "functions as the gatekeeper for expert testimony." *Raskin v. Wyatt Co.*, 125 F.3d

55, 66 (2d Cir. 1997). As the Rule indicates, the proponent of expert testimony has the burden of establishing that the admissibility requirements are met by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10.

    I.    Dr. Markowitz

Dr. Markowitz, as a historian, will primarily rely on documents from the Monsanto archives and past statements by Monsanto executives. Monsanto objects to conclusions Dr. Markowitz reaches in his report when interpreting those documents, such as his statement that "Monsanto's documents indicate a recognition of the need to do long term chronic testing," ECF No. 208-4 at 23, and that "profits and retention of the market played a significant role in Monsanto's decision to keep making PCBs," *id.* at 49. Monsanto further objects to Dr. Markowitz's statements about the company's thought processes, as when he states that warnings issued by Monsanto were "the result of a concern about legal liability." *Id*. at 30. Monsanto objects to any statements beyond Dr. Markowitz's expertise, including testimony about PCB toxicity, governmental regulations, and corporate governance. Finally, Monsanto argues that Plaintiffs seek to use Dr. Markowitz as a vehicle for the introduction of otherwise-inadmissible documents into evidence.

Plaintiffs contend that Dr. Markowitz is qualified to evaluate historical materials and testify about their contents and relevant contexts. The Second Circuit has acknowledged that

> a historian's "specialized knowledge" could potentially aid a trier of fact in some cases. A historian could, for example, help to identify, gauge the reliability of, and interpret evidence that would otherwise elude, mislead, or remain opaque to a layperson. He or she might helpfully synthesize dense or voluminous historical texts. Or such a witness might offer background knowledge or context that illuminates or places in perspective past events.

*Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 135–36 (2d Cir. 2013) (internal citations omitted). Given his decades of experience studying environmental and occupational health and safety, together with his training as a research historian, Dr. Markowitz is qualified to explain the background and context of the Monsanto materials. Such testimony is consistent with the Second Circuit's endorsement of historian testimony and will likely aid the trier of fact.

Plaintiffs directly address Monsanto's concerns about Dr. Markowitz improperly construing the company's knowledge or intent. They note that, when faced with these same objections, another district court found: "Dr. Markowitz is not directly testifying as to Monsanto's intent, motive, or state of mind. Dr. Markowitz's testimony instead addresses what was knowable at relevant times in this case about the dangers of PCBs to the environment and humans." *City of Seattle v. Monsanto Co.*, No.

6

C16-107-RAJ-MLP, 2023 WL 4014294, at *9 (W.D. Wash. June 15, 2023). Indeed, any testimony about what Monsanto knew would be inappropriate unless supported by documentation of such knowledge. Dr. Markowitz is qualified to testify about what was knowable based upon his historical research.

Insofar as Dr. Markowitz plans to testify about Monsanto's goals, such as the avoidance of PCB litigation, his statements would again need to be supported by the records. He may draw reasonable inferences from those records, as "it is certainly within the scope of a historian's expertise to draw inferences about historical actors' knowledge and beliefs based on evidence. . . ." *Burton v. Am. Cyanamid*, No. 07-CV-0303, 2018 WL 3954858, at *6 (E.D. Wis. Aug. 16, 2018). "To the extent that defendants wish to challenge the facts and assumptions underpinning such inferences, they may do so in the course of cross examination." *Id.*

Dr. Markowitz has testified against Monsanto in other cases. Monsanto cites some of that prior testimony and warns that he will try to testify about matters, such as PCB toxicity and the human nervous system, that are beyond his expertise as a historian. Monsanto's motion specifically seeks to exclude Dr. Markowitz's opinions about the dangers of PCBs and general causation, noting that he is not a medical doctor, toxicologist, epidemiologist, pathologist, chemist, ecologist, or engineer.

7

The Court will not bar Dr. Markowitz from testifying within his expertise as a historian. As the district court found in *City of Seattle*, "given that Defendants' conduct at issue began in 1935 and the historical record maintained in Monsanto's archive regarding that conduct spans several decades, Dr. Markowitz's testimony employing such records will clearly aid and assist the jury." 2023 WL 4014294, at *10; *see also Burton*, 2018 WL 3954858, at *5 (concluding that Dr. Markowitz's testimony against chemical manufacturer "might be helpful to the jury by using appropriate historical methodology to situate documents in the historical context"). Any conclusions reached or opinions offered by Dr. Markowitz will need to be supported by documents he has reviewed, and by his years of research and scholarship on public health issues. To the extent that Monsanto disagrees with his opinions or objects to their foundation, it may address those issues during cross-examination. *See City of Seattle*, 2023 WL 4014294, at *10.

The Court therefore finds by a preponderance of the evidence that Dr. Markowitz's testimony will assist the trier of fact; that materials he will be citing are sufficient for him to form opinions; that his methods will be reliable; and that insofar as he is acting within his expertise as a historian, he will be properly applying those methods to the facts of the case. *See* Fed. R. Civ. P. 702.

II.  Dr. DeGrandchamp

Monsanto's objections to Dr. DeGrandchamp are similar to those asserted against Dr. Markowitz. Monsanto contends that Dr. DeGrandchamp will speculate about the company's intentions, offer legal conclusions about industry standards, editorialize about Monsanto's documents, and offer improper opinions about what Monsanto "knew" or "understood" at various times. Monsanto also contends that Dr. DeGrandchamp will serve as a conduit for hearsay.

Like Dr. Markowitz, Dr. DeGrandchamp has spent years studying historical literature, with a focus on toxicology. He has also reviewed Monsanto's internal records, including the company's product testing relevant to PCB toxicity. He has conducted his own research on molecular events triggering PCB-induced cancer, and his report includes significant discussion of the history of toxicity testing. One of his conclusions is that animal toxicity testing as early as the 1940s would have shown that PCBs are carcinogenic, and that certain "triggers" should have alerted Monsanto to the need to conduct chronic toxicity testing.[1] One such trigger was the knowledge that DDT,

---

[1] Monsanto submits that none of the Plaintiffs claim to have cancer, and that a fear of contracting cancer is not actionable in this case. Because Monsanto represents to the Court that it will brief those matters in future motions *in limine* and at summary judgment, the Court will not address those issues at this time.

which Plaintiffs submit is "very similar" to PCBs, is a harmful chemical. ECF No. 226 at 25. Dr. DeGrandchamp also found case studies of workers dying in the 1930s after being exposed to PCB mixtures. ECF No. 226-8 at 109. Dr. DeGrandchamp will testify that toxicity testing was common at that time, and that Monsanto did not lack either the technology or the expertise to conduct such testing.

Monsanto contends that Dr. DeGrandchamp may not speculate about what toxicity testing would have revealed. His report, however, discusses studies performed decades later that showed systemic toxic effects of PCBs. The Court will therefore allow Dr. DeGrandchamp to testify about the "triggers" that, in his opinion, should have prompted Monsanto to conduct testing, the testing protocols that were available, and what such testing would likely have revealed. *See Daubert*, 509 U.S. at 592 ("Unlike an ordinary witness, . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation").

Like Dr. Markowitz, Dr. DeGrandchamp may testify about what was known in the industry at a given time. He may not testify about what Monsanto knew or intended, unless such knowledge or intent is supported by appropriate documentation or statements. While Monsanto objects to testimony about the company's state of

mind, Plaintiffs submit that Dr. DeGrandchamp will not be presenting any such testimony.

Monsanto's contention that Dr. DeGrandchamp will offer improper legal conclusions is misplaced. Dr. DeGrandchamp's report cites standards established by public organizations and the chemical industry, including the American Public Health Association and the Chemical Manufacturers Association. He also has extensive experience working with government agencies and can speak to their guidelines and processes. Plaintiffs represent that Dr. DeGrandchamp will not testify that any regulations or industry standards were violated. He will instead presumably establish that such rules and guidelines existed – matters that are within his expertise – and allow the jury to evaluate Monsanto's actions in that context. *See, e.g., United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991) (holding that "testimony concerning the ordinary practices in the securities industry may be received to enable the jury to evaluate a defendant's conduct against the standards of accepted practice").

Monsanto's final argument is that Dr. DeGrandchamp will be basing his testimony on inadmissible hearsay. "[A] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Marvel Characters*, 726 F.3d at 136

11

(citation and quotation marks omitted). That said, "[u]nder [Federal Rule of Evidence] 703, experts can testify to opinions based on inadmissible evidence, including hearsay, if experts in the field reasonably rely on such evidence in forming their opinions." *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008); *see also United States v. Mulder*, 273 F.3d 91, 102 (2d Cir. 2001). Here, both experts will be asked to testify about Monsanto's conduct over the course of several decades. The Monsanto archives and related testimony are the sorts of materials that such experts would "reasonably rely on" in forming their opinions. Accordingly, while the Court does not foreclose future hearsay objections once specific materials are identified, it declines to issue a blanket order barring the use of Monsanto's records and statements.

    In sum, the Court finds that Dr. DeGrandchamp is qualified to testify as an expert, and that Plaintiffs have demonstrated by a preponderance of the evidence that his testimony will assist the trier of fact; his information sources are sufficient; his methods and practices are reliable; and that he will reliably apply accepted principles and methods of toxicology and historical review to the facts at issue in this case. *See* Fed. R. Evid. 702. He may not present legal conclusions, offer speculative opinions, or opine about Monsanto's "motivations and intentions" unless that opinion

fully supported by the documentary evidence. *Marvel Characters*, 726 F.3d at 135–36.

## Conclusion

For the reasons set forth above, Monsanto's motion to exclude the testimony of Dr. Markowitz and Dr. DeGrandchamp (ECF No. 208) is denied.

DATED at Burlington, in the District of Vermont, this 7th day of November 2025.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge