UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

JOSEPHA W. AUSTIN; ROBIN L.     )
CRUZ; GORDANA POBRIC; and       )
JENNIFER HASELMAN,              )
                                )
      Plaintiffs,               )
                                )
          v.                    )     Case No. 2:23-cv-272
                                )
MONSANTO COMPANY; BAYER         )
CROPSCIENCE L.P.; SOLUTIA,      )
INC.; PHARMACIA, L.L.C.;        )
PHARMACIA, INC.; and            )
PHARMACIA CORP.,                )
                                )
      Defendants.               )

## OPINION AND ORDER

Plaintiffs Josepha Austin, Robin Cruz, Gordana Pobric, and Jennifer Haselman bring this action claiming harm resulting from their exposure to polychlorinated biphenyls ("PCBs"). Defendants in the case are Monsanto Company, Bayer CropScience, L.P., Solutia, Inc., and Pharmacia L.L.C. (collectively "Monsanto"). Plaintiffs have filed a motion to exclude certain opinions and testimony of Monsanto's disclosed experts. For the reasons set forth below, the motion is denied.

## Background

The Complaint alleges that Plaintiffs were exposed to PCBs while at Burlington High School in Burlington, Vermont, and have suffered adverse consequences as a result. Monsanto has designated experts to testify in the case. Plaintiffs now move

to exclude the proposed testimony, and certain opinions, of several such experts.

Plaintiffs' motion first seeks to exclude opinions offered by Richard Lewis, M.D. Dr. Lewis is a physician with a specialty in occupational medicine. He was formerly the Associate Medical Director for the Union Pacific Railroad and has a background in environmental toxicology. Dr. Lewis intends to offer opinions about the effects of PCB exposures generally, and about the likelihood that Plaintiffs' alleged injuries were caused by such exposures.

Plaintiffs also move to exclude the testimony and opinions of Richard S. Legro, M.D. Dr. Legro has an OB-GYN practice with a subspecialty certification in reproductive endocrinology and infertility. He also has clinical research experience with reproductive health and female menstrual disorders. He is expected to testify about specific causation with respect to Plaintiff Gordana Pobric.

Plaintiffs further move to exclude opinions and testimony of Edwin van Wijngaarden, Ph.D. Dr. van Wijngaarden is an epidemiologist with over 20 years of experience conducting epidemiological research. Monsanto intends to call him to testify that the current scientific research does not support a causal relationship between PCB exposure and the injuries alleged by Plaintiffs.

2

Plaintiffs' motion also asks the Court to exclude proposed testimony from three engineers. Wayne Hubbard is a licensed professional engineer who intends to testify about the reliability of the air testing conducted at Burlington High School. John Woodyard reportedly has over 45 years of experience working with PCB regulations, standards, and remediation. He is particularly familiar with EPA regulations and is expected to testify about the role of those regulations in determining how to manage PCBs. Woodyard will also offer opinions about Plaintiffs' exposure calculations and the presence of non-Monsanto byproduct PCBs at Burlington High School. Kurt Herman is an engineer with experience in remediation, chemical fate and transport analysis. He holds a Master of Engineering degree from MIT and a bachelor's degree from Miami University (Ohio). Herman is expected to testify about whether the air and dust samples collected at Burlington High School are representative of Plaintiffs' exposures, and to rebut the testimony of Plaintiffs' expert Kevin Coghlan.

Plaintiffs' final objection is to the proposed testimony of Peter Shields, M.D. Dr. Shields is an oncologist who has conducted research on the chemical and genetic causes of cancer. He also maintains an active clinical practice. Although none of the Plaintiffs claim to have cancer, they allege a fear of contracting cancer because of their PCB exposures. Monsanto

3

informs the Court that it will move to dismiss Plaintiffs' "fear of cancer" claim at summary judgment, and to preclude testimony regarding such a claim in a future motion *in limine*. Dr. Shields has been named as a witness in the event those motions are unsuccessful.

Plaintiffs assert a series of objections with respect to each of these seven experts. Those objections have been fully briefed by the parties, and the Court addresses the admissibility of each expert's proposed testimony below.

## Discussion

Federal Rule of Evidence 702 governs the admissibility of expert testimony. The Rule provides that a witness who is qualified may testify in the form of an opinion or otherwise if the proponent demonstrates to the Court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court has held that, for expert testimony to be admissible under Rule 702, it must satisfy three requirements: (1) the expert witness must be qualified; (2) the testimony must

be reliable; and (3) the testimony must be relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-91 (1993). Under the *Daubert* standard, the trial court "functions as the gatekeeper for expert testimony." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). As the Rule indicates, the proponent of expert testimony has the burden of establishing that the admissibility requirements are met by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10.

### I.    Dr. Richard Lewis

Dr. Lewis is expected to testify that the levels of PCBs to which Plaintiffs were allegedly exposed were not high enough to have caused their injuries. Although Dr. Lewis has conceded that PCBs are carcinogens and toxins, his opinion is essentially that the current literature does not support a causal link between Plaintiffs' alleged exposures and the harms they claim.

Plaintiffs argue that Dr. Lewis should not have disregarded opinions issued by the EPA and the International Agency for Research on Cancer (IARC) regarding the carcinogenicity of PCBs. As noted above, none of the Plaintiffs are claiming to have contracted cancer as of this time. Monsanto therefore contends that Dr. Lewis need not have considered cancer risk.

Plaintiffs are also critical of Dr. Lewis's failure to identify a threshold amount of PCB exposure that, in his opinion, would have been sufficient to cause their alleged

injuries. This is similar to an argument Monsanto has asserted in moving to exclude Plaintiffs' experts: that "dose matters" and that proof of causation requires identifying a sufficient dose exposure. The Court acknowledges that it is the Plaintiffs' burden to show causation. The Court also finds that, like Plaintiffs' proposed experts, Dr. Lewis is qualified to review the literature and offer an opinion about causation. The Court will not bar his testimony for failure to identify a precise, threshold dose at which PCBs become harmful.

Plaintiffs claim that Dr. Lewis's opinions are not reliable because he failed to credit animal and mechanistic or cellular studies. His report notes that animal studies complement "the occupational health literature in evaluating the potential health effects from exposures," and Plaintiffs submit that his subsequent failure to consider such studies is inconsistent with that acknowledgement. ECF No. 214-5 at 7. Dr. Lewis's expert opinion as to whether certain studies are relevant to this case may differ from that of Plaintiffs' experts, but difference of opinion is not a basis for excluding his testimony. The same is true with respect to studies conducted by the EPA, the IARC, or any other research center or organization.

Dr. Lewis disagrees with Plaintiffs' experts about the salience of two highly-studied PCB contamination events: the Yusho and Yu-Cheng incidents. The disagreement centers on the

fact that the exposures in those events, which resulted from the
ingestion of rice oil that had been heated to high temperatures,
also involved a separate chemical – dibenzofuran – that Monsanto
claims was not present in this case. Plaintiffs submit that one
of Monsanto's own witnesses testified that all PCB products
contain dibenzofuran, and that Dr. Lewis's opinions are
therefore unreliable. In reply, Monsanto argues there is no
evidence that the concentration levels of dibenzofuran in this
case were comparable to those in the Yusho and Yu-Cheng events.
Again, this matter will likely involve disagreement among
experts and does not render Dr. Lewis's methodologies
unreliable. The Court therefore finds that Monsanto has met its
burden under Rule 702 and will not exclude Dr. Lewis's proposed
testimony on the grounds set forth in Plaintiffs' motion.

## II.  Dr. Richard Legro

Dr. Legro, an obstetrician/gynecologist, is expected to
testify about Plaintiff Gordana Pobric. Plaintiffs' arguments
for excluding his testimony echo those raised with respect to
Dr. Lewis: that his methodology is flawed because he disregards
"animal studies, mechanistic studies, and cellular studies," and
is inconsistent with the work of the EPA and IARC. ECF No. 214-1
at 10. Monsanto notes that Dr. Legro does, in fact, consider
animal studies, and finds them inapplicable for reasons set
forth in his report. Once again, a disagreement among the

7

parties and their experts does not justify exclusion of Dr. Legro's testimony.

Plaintiffs also contend that Dr. Legro's causation opinion is unreliable because he fails to apply the "Bradford Hill" analysis. Dr. Legro testified that "Bradford Hill" has been supplemented by other guidelines. Those guidelines are referenced in his report. Whether one set of criteria or guidelines is superior to another is a matter for discussion by the experts and for possible cross-examination. The Court sees no basis at this time for excluding Dr. Legro's testimony on the basis of the criteria he has chosen to apply.

Plaintiffs' final contention is that, in his deposition, Dr. Legro admitted that his conclusion about specific causation is based on "speculation." The Court has reviewed the cited portions of the deposition, and although Dr. Legro did use the word "speculation" several times during this testimony, it is not clear that the cited statements were intended to apply to his ultimate conclusion regarding specific causation. The Court therefore declines to exclude his testimony on that basis.

**III. Edwin van Wijngaarden, Ph.D.**

Dr. van Wijngaarden, an epidemiologist, is expected to testify about general causation. Plaintiffs first contend that his testimony should be entirely excluded because his expert report was "ghost written" by two other professionals. ECF No.

241-1 at 12. Dr. van Wijngaarden explained in his deposition
that others did assist with the literature review, but that he
made all final decisions about which studies to include or
exclude in the report. ECF No. 214-8 at 30. Moreover, while
certain tables in the report may have been created by others,
that does not render Dr. van Wijngaarden's opinions either
flawed or unreliable.

Plaintiffs' remaining arguments relate to the methodology
Dr. van Wijngaarden applied when considering the literature.
Plaintiffs contend that Dr. van Wijngaarden cited EPA guidelines
in his report but failed to follow or apply those guidelines.
The report also discussed the importance of considering animal
and mechanistic studies, but allegedly failed to address the
weight of those studies. Dr. van Wijngaarden excluded human
studies involving dibenzofuran and, according to Plaintiffs,
mischaracterized certain studies as reporting "negative"
results.

None of these criticisms highlight a fundamental flaw in
either methodology or principles. Dr. van Wijngaarden is
qualified to review the literature and form an opinion as to
which studies and publications are relevant to this case, and
which are not. Again, Plaintiffs' experts may disagree about his
conclusions on those questions, but the Court will not bar his
testimony on that basis. If Dr. van Wijngaarden's report

contains errors, such as characterizing a positive result as negative, he may be cross-examined and, ultimately, the finder of fact may determine his reliability.

### IV.  Wayne Hubbard

Hubbard, an engineer, is expected to testify that the air testing at Burlington High School was performed while the ventilation system was not operating properly. Plaintiffs contend that Hubbard's conclusion is based on a statement in a draft report from Burlington High School's air sampling contractor. The contractor's final report contained no such statement, and there is reportedly no evidence that any other party, such as the State of Vermont or the EPA, questioned the contractor's air testing protocols or results. Nonetheless, Hubbard construed the draft report as admitting a fact about the ventilation at the time of testing, and his choice to focus on that admission does not render his conclusion unreliable. Whether the consultant's final report is a more accurate account goes to the weight of Hubbard's conclusion, rather than its admissibility.

Plaintiffs also object to Hubbard's conclusion that no remediation was necessary at Burlington High School. Monsanto represents to the Court in its briefing that Hubbard will not offer that opinion. ECF No. 225 at 15. Accordingly, the Court will not address that issue.

Plaintiffs' final argument is that Hubbard improperly relied on CDC guidance that applies solely to managing infectious diseases in hospital settings. The CDC guidance pertains generally to the importance of ventilation in reducing contaminants in indoor air. Plaintiffs contend that the guidance does not apply to constant emitting sources such as PCBs, and is generally inapplicable to air contamination in a high school. While Hubbard's reliance on certain guidance may call his conclusions into question, it is within his discretion as an expert to choose the science or regulatory materials that underlie those conclusions. He may be questioned about his choices, and again, the trier of fact will determine his reliability. The Court finds no basis under Rule 702 for barring Hubbard's opinions and testimony at this time.

### V.  John Woodyard

Plaintiffs claim that John Woodyard, a long-time engineer with PCB and regulatory experience, is not truly independent. There is no dispute that Woodyard has testified for Monsanto in the past. Plaintiffs also have evidence that people within Monsanto consider Woodyard as part of their litigation team for developing strategies relating to school PCB cases.  ECF No. 214-12 at 10-12. Those facts pertain to potential bias, which is generally a matter of weight rather than admissibility. *See Norwest Fin., Inc. v. Fernandez*, 86 F. Supp. 2d 212, 228 n.15

(S.D.N.Y.) ("An expert witness's bias goes to the weight, not the admissibility, of the testimony, and should be brought out on cross-examination.") (quoting 4 Weinstein's Federal Evidence § 702.06[8], at 702–59 (2d ed. 1999)).

Plaintiffs further argue that Woodyard should not be allowed to offer legal conclusions, as during his deposition when he referred to Vermont's laws as "arbitrary." Monsanto notes that Woodyard is not alone in his criticism of Vermont's air level standards, as at least one of its other witnesses will characterize the methods used by Vermont to establish its standards as "novel" and a "deviat[ion] from generally accepted risk assessment practices." ECF No. 207-4 at 60 (expert report of Dr. Nadia Moore). Furthermore, Woodyard's statement is a characterization, not a legal conclusion.

Plaintiffs' last contention with regard to Woodyard's proposed testimony is that he is unqualified to testify about "warning issues" such as product labels and product literature. Woodyard conceded in his deposition that he has no experience creating such labels. He does, however, have experience with relevant regulations, as well as the testing data that might give rise to such warnings. Again, with a proper foundation, his testimony about product warnings may be reliable. Woodyard is clearly qualified to testify in this case, and the Court will

not bar the testimony identified in Plaintiffs' motion at this time.

**VI.  Kurt Herman**

Herman is a principal at Gradient, an environmental and risk sciences consulting firm. He is expected to testify, in part, that the air sampling performed at Burlington High School was insufficient insofar as there is too little data and the samples were taken from locations that were too disparate. Plaintiffs argue that his testimony should be excluded, or at least limited, because Herman is not an industrial hygienist and has never conducted air testing for PCBs in high schools.

That Herman is a not an industrial hygienist does not disqualify him from testifying about air samples. He reportedly has over 25 years of experience evaluating sources and levels of chemicals in the air. He also testified in his deposition that he often relies on testing performed by others, and oversees sampling efforts in his work at his consulting firm.

Plaintiffs argue that Herman should not be allowed to testify that the testing performed at Burlington High School was insufficient without offering an opinion as to how much data would have been, in his opinion, enough to form reliable conclusions. While such testimony from Herman would be useful, a rebuttal witness is not required to offer an alternative methodology. *See Aviva Sports, Inc. v. Fingerhut Direct*

13

*Marketing, Inc.*, 829 F. Supp. 2d 802, 834 (D. Minn. 2011) ("[R]ebuttal expert witnesses may criticize other experts' theories and calculations without offering alternatives."). Monsanto has shown by a preponderance of the evidence that Herman has sufficient expertise to determine whether the data collected at Burlington High School was sufficiently robust.

Plaintiffs next argue that Herman's comments about whether the ventilation system was operating properly are unsupported by any facts. As discussed above, Monsanto's experts rely on a statement made in a draft report. Herman has also asserted that the ventilation systems were not operating normally during the pandemic. Herman reportedly had difficulty substantiating this latter claim and will need to present supporting facts if he intends to make that same assertion at trial.

Monsanto submits that, even assuming properly-operating ventilation systems, tests performed while the school was shut down may not reflect air flow and other contamination factors in effect while the school was operating. Herman will apparently use that distinction to question the testing results on which Plaintiffs' experts rely. Whether the distinction is valid is a matter for expert discussion, and goes to weight rather than admissibility.

Herman also opined that the building materials at Burlington High School may have varied from room to room, and

that the air quality in each room could vary accordingly. He did not base his opinion on any specific testing of building materials, and was instead making a more general statement about school construction during the relevant era. It is his opinion that Coghlan failed to account for such differences.

Plaintiffs argue that Herman's opinion is speculative and inadmissible, as it is not based on actual, proven facts. The Court finds, at this preliminary stage, that Monsanto has offered sufficient evidence of Herman's training and experience to justify his general statement about school construction materials. Cross-examination about the bases for his opinion will allow the finder of fact to apply appropriate weight.

Plaintiffs' last objection to Herman's proposed testimony pertains to his observation about byproduct PCSs. Herman noted that PCBs are found in multiple products, including cardboard packaging, plastic bags, and paint. He also apparently identified byproduct PCBs in the subject test results. Once again, the purpose of his testimony is to allege that Coghlan failed to account for alternative sources of PCBs.

Plaintiffs submit that Herman's opinion is based on assumptions, and that any such testimony is inadmissible. The Court finds that it is within Herman's expertise to opine on the possible sources of PCBs, and to evaluate the analysis of the

testing data for flaws or omissions. Accordingly, the Court will not bar his testimony at this time.

**VII. Dr. Peter Shields**

Dr. Shields, who is board certified in internal medicine and medical oncology, has been retained numerous times to testify for Monsanto. While Plaintiffs do not allege bias, they do claim that Dr. Shields' opinions are fundamentally flawed. Plaintiffs argue that Dr. Shields does not fully understand the concept of "more likely than not," that he has not reviewed or relied on Monsanto's internal documents, and that he improperly rejected all animal and cellular or mechanistic studies regarding health effects of PCBs. Monsanto contends that Dr. Shields' opinions and methodologies are reliable, and that Plaintiffs' criticisms go to the weight of his testimony rather than its admissibility.

Dr. Shields has testified that when reaching a conclusion about causation, he would explain in court that his conclusion means the causational link is "more likely than not." When asked whether his understanding of "more likely than not" included the word "probably," he testified that it did not. ECF No. 214-18 at 8-9. Plaintiffs argue that this misunderstanding of the term "probably" represents a fundamental flaw.

As Dr. Shields made clear in his testimony, he is not an attorney, and his use of "more likely than not" is not an effort

16

to apply a legal standard. Instead, it is an attempt to express his opinion about "whether there's sufficient human evidence." *Id.* at 9. While his testimony did not make clear why the word "probably" would be not included in, or equivalent to, the concept of "more likely than not," the context of his testimony suggests that he simply prefers using the latter phrase in legal settings. Moreover, it is the finder of fact, and not the scientific experts, who must ultimately determine whether a fact is more likely than not. The expert's understanding of the word "probably" in that context does not determine whether his testimony is admissible.

Plaintiffs criticize Dr. Shields for his failure to review any internal Monsanto documents. They appear to be arguing that the Monsanto documents recognize the harmful effects of PCBs, and are thus inconsistent with some of Dr. Shields' opinions. Plaintiffs also question Dr. Shields' rejection of other sources, such as the State of Vermont, that have cited the scientific evidence of the harmful effects of PCBs. Plaintiffs further claim that Dr. Shields' opinions are unreliable because he does not properly consider non-human studies and rejects findings by the EPA and the IARC. He has also allegedly reached conclusions as a Monsanto-retained expert that are inconsistent with his own prior research.

Dr. Shields previously explained why he discounted certain
studies, and why he disagrees with the State of Vermont's
reading of statements by the EPA and the IARC. His past work is
fodder for cross-examination, and his reliance on external
studies rather than internal Monsanto materials is not a basis
for exclusion. Monsanto has demonstrated by a preponderance of
the evidence that Dr. Shields is qualified to testify in this
case, as he has in numerous previous cases, and that the methods
and principles he applies satisfy the requirements of Rule 702.
Accordingly, the Court will not prevent him from testifying at
this time.

## Conclusion

For the reasons set forth above, based upon the record
before it and the issues raised in the parties' briefing, the
Court finds that Monsanto has shown by a preponderance of
evidence that the experts in question are qualified; that their
testimony is based on sufficient facts and data; that they each
used reliable principles and methods; that their opinions will
reflect a reliable application of those principles and methods
to the facts of the case; and that their testimony will help the
trier of fact understand the evidence or determine certain facts
at issue. Plaintiffs' motion to exclude certain opinions and

testimony of Monsanto's disclosed experts (ECF No. 214) is

denied.


     DATED at Burlington, in the District of Vermont, this 1st

day of December 2025.

                         /s/ William K. Sessions III
                         Hon. William K. Sessions III
                         U.S. District Court Judge